UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In re:<br><br>THE ACADEMY AT PENGUIN,<br>HALL, INC.<br><br>Debtor. | CHAPTER 11<br><br>Case No. 25-11191 (CJP) |

**MOTION OF ORIGEN WENHAM LLC FOR RELIEF FROM THE AUTOMATIC STAY WITH RESPECT TO 36 ESSEX STREET, WENHAM, MASSACHUSETTS**

Origen Wenham LLC ("Origen"), holder of a mortgage securing real property at 36 Essex Street, Wenham, Massachusetts owned by The Academy at Penguin Hall, Inc. (the "Debtor"), hereby moves for the entry of an order granting Origen relief from the automatic stay with respect to the Property (as defined below), and in support thereof, Origen states as follows:

**BACKGROUND**

1. Origen is a private investment firm with a usual place of business located at 112 South Street, 6th Floor, Boston, Massachusetts

2. The Debtor owns 36 Essex Street, Wenham, Massachusetts (the "Property"), where it operated The Academy at Penguin Hall, a now closed private all-girls school.

3. The Debtor obtained financing for the Property through Origen's predecessor, Salem Five Cents Savings Bank, successor by merger to Georgetown Bank ("Salem Five"). In connection with that financing, the Debtor executed the following relevant loan documents:

   a. a certain Commercial Promissory Note (Construction Loan) dated September 16, 2016 and executed by the Debtor in favor of Salem Five in the original principal amount of $2,000,000.00 (the "Construction Note"), attached as Exhibit "A" hereto;

 b. a certain Commercial Promissory Note (Revolving Line of Credit) dated September 16, 2016 and executed by the Debtor in favor of Salem Five in the original principal amount of $2,000,000.00 (the "Original RLOC Note," collectively with the Construction Note, the "2016 Notes"), as amended by a certain Amended and Restated Commercial Promissory Note dated November 30, 2017 and executed by the Debtor in favor of Salem Five increasing the principal amount to $3,000,000.00 (the "Amended RLOC Note," collectively with the "Original RLOC Note," the "RLOC Note"), attached as Exhibits "B" and "C" respectively hereto;

 c. a certain Loan Agreement (Construction Loan) dated September 16, 2016 by and between the Debtor and Salem Five (the "Construction Loan Agreement"), as modified a certain Loan Modification Agreement (Construction Loan) dated November 30, 2017 by and between the Debtor and Salem Five (the "Construction Loan Modification"), attached as Exhibit "D" and "E" respectively hereto;

 d. a certain Loan Agreement (Revolving Line of Credit Loan) dated September 16, 2016 by and between the Debtor and Salem Five (the "RLOC Loan Agreement"), as modified by a certain Loan Modification Agreement (Revolving Line of Credit Loan) dated November 30, 2017 by and between the Debtor and Salem Five (the "RLOC Loan Modification"), attached as Exhibits "F" and "G" respectively hereto;

 e. a certain Mortgage dated September 16, 2016 granted by the Debtor in favor of Salem Five (the "Mortgage") encumbering the Property and recorded in the Essex County Southern District Registry of Deeds (the "Registry") in Book 35273 at Page 426 and filed with the Essex County Southern Registry District of the Land Court (the "Land Court") as Document No. 575408, noted on Certificate of Title No.

89192, as assigned to Origen by that certain Assignment of Mortgage dated April 2, 2025 (the "Assignment of Mortgage"), and recorded with the Registry in Book 42644, at Page 512 and filed with the Land Court as Document No. 657749, copies of the Mortgage and Assignment of Mortgage are attached as Exhibits "H" and "I" respectively hereto;

f. a certain Collateral Assignment of Leases and Rents dated September 16, 2016 and granted by the Debtor in favor of Salem Five encumbering the Property and recorded with the Registry in Book 35273, Page 445, and filed with the Land Court as Document No. 575409 noted on Certificate of Title No. 89192 (the "ALR"), as assigned to Origen by that certain Assignment of Collateral Assignment of Leases and Rents dated April 2, 2025 (the "Assignment of ALR") and recorded with the Registry in Book 42644, at Page 514 and filed with the Land Court as Document No. 657750, attached as Exhibits "J" and "K" respectively hereto;

g. a certain Modification of Security Documents dated November 30, 2017 and recorded with the Registry in Book 36372, Page 437, and filed with the Land Court as Document No. 575409 noted on Certificate of Title No. 588449, modifying the Mortgage and ALR (the "Modification of Security Documents"), attached as Exhibit "L" hereto;

h. a certain Security Agreement dated September 16, 2016 pursuant to which the Debtor granted to Salem Five a first priority security interest in all assets of the Debtor (the "Security Agreement"), attached as Exhibit "M" hereto; and

i. a certain UCC-1 dated October 11, 2016 granted by the Debtor to Salem Five as the secured party, Filing Number: 201631756010, as amended by a certain UCC-3

3

Amendment dated August 18, 2020, Filing Number: 202069627370, as continued by a certain UCC-3 Continuation Dated September 27, 2021, Filing Number: 202181357430 (collectively, the "UCCs"), attached as Exhibit "N" hereto.

4. The Construction Note, the RLOC Note, the Construction Loan Agreement, the Construction Loan Modification, the RLOC Loan Agreement, the RLOC Loan Modification, the Mortgage, the Assignment of Mortgage, the ALR, the Assignment of ALR, the Modification of Security Documents, the Security Agreement, the UCC, the 2020 Forbearance (as defined below), the 2022 Forbearance (as defined below), and all other documents executed in connection therewith are collectively referred to herein as the "Loan Documents." The obligations evidenced by the Loan Documents are sometimes collectively referred to herein as the "Loans."

5. In or around May 2019, the Debtor defaulted under the Loan Documents.

6. On or around February 25, 2020, the Debtor, Salem Five and the guarantors entered into a certain Forbearance Agreement (the "2020 Forbearance"), wherein the Debtor, *inter alia*, acknowledged its defaults under the Loans; acknowledged an outstanding balance due under the Loans of $5,283,737.12 as of February 19, 2020 exclusive of attorney's fees; acknowledged legal expenses in the additional amount of $44,806.50 through February 19, 2020; and waived any defenses, setoffs or counterclaims related to the Loans. A true and accurate copy of the 2020 Forbearance is attached as Exhibit "O" hereto.

7. The Debtor defaulted under the 2020 Forbearance.

8. On or about March 17, 2022, the Debtor, Salem Five and the guarantors entered into a certain Forbearance Agreement (the "2022 Forbearance") wherein the Debtor, *inter alia*, acknowledged its defaults under the 2020 Forbearance and the Loans; acknowledged that Salem Five implemented the default rate retroactive to March 27, 2019; acknowledged the outstanding

balance due under the Loans of at least $6,625,885.43[1] as of March 17, 2022 exclusive of attorney's fees; acknowledged legal expenses and appraisal costs in the additional amount of $183,125.35 through February 28, 2022; and waived any defenses, setoffs or counterclaims related to the Loans. A true and accurate copy of the 2022 Forbearance is attached as Exhibit "P" hereto.

9. The Debtor once again defaulted under the 2022 Forbearance. In any event, the obligations under the Loan Documents became due on February 25, 2025.

10. On February 27, 2025, Salem Five sent a Demand Letter and Notice of Intent to Foreclose and Seek Deficiency Judgment After Foreclosure, a copy of which is attached as Exhibit "Q."

11. As a result of the foregoing, the Loans remain accelerated, and the Debtor remains in default.

12. The Loans were assigned to Origen on or about April 2, 2025.

13. Origen scheduled a public auction foreclosure sale at 1:00 pm on June 11, 2025 for the Property.

14. On June 11, 2025 (the "Petition Date"), the Debtor filed a Voluntary Petition under the provisions of Chapter 11 of the United States Bankruptcy Code (the "Bankruptcy Code") with the United States Bankruptcy Court for the District of Massachusetts (the "Bankruptcy Court").

**ALLEGATIONS REQUIRED BY MLBR 4001-1(a)(3)**

15. As of the Petition Date, the outstanding balance due on the Notes was $8,526,364.04, which is secured by a valid, first mortgage lien on the Property. A breakdown of the outstanding balance due is as follows:

---

[1] The Debtor actually confirmed an additional $304,602.76 in additional interest due as of February 19, 2025, however, after execution of the 2022 Forbearance, Salem Five realized certain interest had been calculated twice and corrected the error on its books.

5

**Construction Loan:**

| | |
|---|---|
| Principal | $1,999,854.00 |
| Interest | $1,295,726.32 |
| Late Fees | $8,459.81 |
| Legal Fees | $99,374.90 |
| Appraisal Fee | $6,995.00 |
| **Balance** | **$3,410,410.03** |

**RLOC Loan:**

| | |
|---|---|
| Principal | $3,000,000.00 |
| Interest | $1,943,745.96 |
| Late Fees | $12,653.21 |
| Legal Fees | $149,062.34 |
| Appraisal Fee | $10,492.50 |
| **Balance** | **$5,115,954.01** |

| | |
|---|---|
| **TOTAL(S):** | **$8,526,364.04** |

16. The encumbrances on the Property as of the Petition Date are as follows (in order of priority):

   a. The Property is encumbered by that certain Mortgage described in Paragraph 4 above, securing the balance owed under the Note of $8,526,364.04, plus continuing interest, costs and attorneys' fees and expenses in the event Origen's claim is determined to be fully secured;

   b. The Property is encumbered by that certain ALR described in Paragraph 4 above;

   c. The Property is encumbered by that certain Mortgage and Security Agreement and Fixture Filing Statement dated January 29, 2016 in favor of James X. Mullen (the "Mullen Mortgage") and recorded with the Registry in Book 34693, Page 465, and filed with the Land Court as Document No. 569190, as assigned to RS Lyon Properties Group LLC ("RS Lyon") by that certain Assignment of Mortgage and Security Agreement and Fixture Filing Statement dated June 14, 2022 (the "RS

Lyon Assignment")[2] and recorded with the Registry in Book 41001, Page 348, and filed with the Land Court as Document No. 637052 and (ii) that certain Mortgage dated October 2, 2019 in favor of RS Lyon (the "RS Lyon Mortgage") and recorded with the Registry in Book 37901, Page 435, and filed with the Land Court as Document No. 606051, securing the balance of $5,146,740.10, *see* Proof of Claim No. 15 filed by RS Lyon on July 23, 2025;

d. The Property is encumbered by that certain Mortgage dated December 11, 2019 in favor of Garden Street Properties and recorded with the Registry in Book 38102, Page 492, and filed with the Land Court as Document No. 608139, securing the balance of $611,118.00, *see* Schedule D, Part 1, 2.1;

e. The Property is encumbered by those certain Massachusetts Department of Revenue (the "MA DOR") liens securing the balance of $187,907.89, *see* Proof of Claim 3 filed by the MA DOR on June 23, 2025; and

f. The Property is encumbered by those certain Department of Treasury – Internal Revenue Service (the "IRS") liens totaling $1,472,945.33 and securing the balance owed of $1,378,388.38 pursuant to 26 U.S.C. § 6321, *see* Proof of Claim No. 8 filed by the IRS on July 14, 2025.

17. The total amount of encumbrances on the Property as of the Petition Date are therefore not less than **$15,945,075.36**.

18. The fair market value of the Property as of July 8, 2025 is $8,300,000, based on an

---

[2] The Mullen Mortgage and RS Lyon Assignment are subordinated to the Mortgage by *inter alia*, that certain Second Amendment of Intercreditor and Subordination Agreement dated June 14, 2022 by and between James X. Mullen, RS Lyon, and Salem Five, recorded with the Registry in Book 41001, Page 353, and filed with the Land Court as Document No. 637053.

7

appraisal obtained by Origen and performed by Matthew Wood and Jeffrey Carlson of BBG, Inc. A true and accurate copy of the July 8, 2025 Appraisal Summary Report is attached as Exhibit "R" hereto. Origen estimates that the liquidation value to be approximately 25% less than the market value, or approximately $6,225,000.

19. In its Schedules, the Debtor contends the Property is valued at $25 million based on an "expression of interest" from a third party. *See* Dkt. No. 16 at Schedule A, Part 9. At the Debtor's 341 Meeting, the Debtor's principal Mary Martins confirmed that such "expression of interest" was made by an acquaintance of hers approximately 5 years prior and again approximately 5 or 6 months ago. The Debtor refused to reveal the identity of this purportedly interested party or any other material details regarding the basis for this "expression of interest."

20. Additionally, in its *Motion to Convert This Case to Chapter 7*, the Debtor represented it had an appraisal for $15.5 Million "as-is" for the Property. *See* Dkt. No. 10 at ¶ 8. During the Debtor's recent 341 Meeting, the Debtor admitted that this appraisal was from 2019.

21. As such, Origen's claim is under-secured based on the fair market value and liquidation value of the Property according to the only evidence of the current value of the Property, the most recent appraisal performed by BBG, Inc. on July 8, 2025.

22. There is no other collateral of any meaningful value securing the Notes. According to the Debtor's testimony at the 341 Meeting, the business assets of the Debtor, which include laptops and school equipment, are allegedly valued at $0.

23. As set forth above, Debtor executed the Notes in favor of Georgetown Bank, which was later merged with Salem Five Cents Savings Bank and then were assigned to Origen.

24. The Property is a commercial building and is therefore not subject to any declaration of homestead.

# LEGAL ARGUMENT

**A. Origen is entitled to relief from the automatic stay pursuant to 11 U.S.C. § 362(d)(1) because its interest is not adequately protected.**

25. Bankruptcy Code 11 U.S.C. § 362(d)(1) provides that a party in interest is entitled to relief from the automatic stay for cause, including the movant's lack of adequate protection in the collateral in which the movant holds an interest.

26. "A creditor seeking relief under section 362(d)(1) based on lack of adequate protection bears the burden of proving a decline or threat of decline in the value of its collateral as a result of the stay. If the creditor meets that standard, the burden shifts to the debtor 'to prove that the collateral is not declining in value, or that the secured party is adequately protected through periodic payments, an equity cushion, additional or replacement liens or good prospects for a successful reorganization.'" *In re Rosado*, No. 24-11851 (JLG), 2025 WL 1520515, at *4 (Bankr. S.D.N.Y. May 28, 2025) (internal citations omitted).

27. A creditor moving for relief under 362(d)(1) can establish declining value from an appraisal or similar evidence, or "[a]lternatively, creditor may satisfy its burden of proof by 'demonstrating that the debtor has completely failed, or substantially failed, to make post-petition payments.'" *Id*; see also *In re Davis*, No. 23-11475, 2024 WL 460483, at *2 (Bankr. S.D.N.Y. Feb. 6, 2024) ("Although 'cause' is not defined by the Bankruptcy Code, courts have held that '[a] debtor's failure to make regular mortgage payments as they become due constitutes sufficient "cause" to lift the automatic stay.'").

28. Origen's interest in the Property is not adequately protected as the Property has decreased in value since 2019 through July 8, 2025 – from $15.5 Million per the Debtor's appraisal to $8.3 Million per Origen's current appraisal.

29. There is no equity cushion in the Property to provide Origen adequate protection.

Instead, the total debt secured by the Property is almost $16 Million compared to the fair market value of $8.3 Million based on Origen's current appraisal.

30. Further, the Debtor has not made *any* payment to Origen (or its predecessor Salem Five) since at least August 1, 2023.

31. While the Debtor has provided Origen an illusory replacement lien as purported adequate protection, based on the Debtor's representations in its *Emergency Motion to Approve Debtor-in-Possession Financing and Use of Cash Collateral*, it appears that a sale of the Property would not occur until January 2026, at the earliest, which date is uncertain at best given that it is unclear if there is any interest in the Property or serious buyers at a sufficient value to cover the almost $16 Million in secured debt. Even if a developer expressed interest in purchasing the Property, it could be months, if not years, before a developer could obtain the approvals, permitting and zoning relief necessary to develop the Property.

32. During this time, the Debtor has no ability to generate income to pay for maintenance and other necessary expenses, nor professionals, and thus would likely become administratively insolvent.

33. The Debtor therefore cannot meet its burden under Section 362(g) to establish that Origen's interest is adequately protected; thus, relief from the automatic stay is appropriate.

**B.  Origen is entitled to relief from the automatic stay pursuant to 11 U.S.C. § 362(d)(2) as the Debtor does not have any equity in the Property and the Property is not necessary to an effective reorganization.**

34. Bankruptcy Code 11 U.S.C. § 362(d)(2) provides that a party with an interest in the property of a debtor is entitled to relief from the automatic stay to exercise its rights against that debtor's property if (i) the debtor has no equity in the property and (ii) the property is not necessary for an effective reorganization.

35. "A debtor lacks equity in the property for purposes of § 362(d)(2) when the debts secured by liens on the property exceed the value of the property." *In re Old Cold, LLC*, 602 B.R. 798, 829 (B.A.P. 1st Cir. 2019), aff'd sub nom. *In re: Old Cold, LLC*, 976 F.3d 107 (1st Cir. 2020) *citing In re Shoney, LLC*, 2017 WL 474314, at *3 (Bankr. D. Mass. Feb. 3, 2017) (citations omitted).

36. As set forth above, the current appraisal values the Property at no more than $8,300,00.00. *See* Exhibit R. On the contrary, the liens encumbering the Property held by Origen, RS Lyon, Garden Street Properties, the IRS, and MA DOR total not less than $15,945,075.36 as of the Petition Date. As such, the Debtor does not have any equity in the Property. *In re Old Cold, LLC*, 602 at 829.

37. Under Section 362(g) of the Code, the Debtor now bears the burden of proving that the Property is necessary to its reorganization.

38. The United States Supreme Court has held that a showing of necessity is "not merely a showing that if there is conceivably to be an effective reorganization, this property will be needed for it; but that the property is essential for an effective reorganization that is in prospect. This means . . . that there must be 'a reasonable possibility of a successful reorganization within a reasonable period.'" *United Saving Assn of Texas v. Timbers of Inwood Forest Associates, Ltd.*, 484 U.S. 365, 375-76 (1988). That the property in question is indispensable to a debtor's business does not, without more, justify preserving the automatic stay. *See In re Riviera Inn of Wallingford, Inc.*, 7 B.R. 725, 728 (Bankr. D. Conn. 1980). Instead, the debtor must make a strong showing that, *inter alia*, it is moving meaningfully to propose a plan of reorganization and that the contemplated plan has a realistic chance of being confirmed. *See In re Building 62 Limited Partnership*, 132 B.R. 219, 222-23 (Bankr. D. Mass. 1991). Indeed, the reference to "effective

11

reorganization" in Section 362(d)(2)(B) requires that the Court grant relief from the stay if there is no reasonable likelihood of reorganization due to creditor dissent or feasibility considerations. *See In re Channel Really Associates Limited Partnership*, 142 B.R. 597 (Bankr. D. Mass. 1992); *see also In re National Real Estate Limited Partnership II*, 87 B.R. 986, 990-91 (Bankr. D. Wis. 1988).

39. There is no reasonable possibility of a successful reorganization with a reasonable period of time. The Debtor is no longer operating the school and has no source of income. The "plan" as indicated by the Debtor is simply to market and sell the Property. As noted in the DIP Financing Motion, the Debtor is looking to sell the Property for at least $14 Million, yet the liens encumbering the Property are approximately $16 Million. The Debtor has provided no evidence that it could propose even a sale plan that would generate a sufficient purchase price to cover the secured claims, the costs of the sale and the administrative claims, at a minimum. Given this, the Debtor is at real risk of becoming administratively insolvent. In short, the Debtor cannot propose a plan that has a reasonable chance of being confirmed. *In re Costa Bonita Beach Resort, Inc.*, 513 B.R. 184, 197 (Bankr. D.P.R. 2014) ("The Debtor does not currently generate sufficient income by itself to cover the few operating expenses that it has actually paid during the case (which payments did not include either post-petition payments to -the secured lender], post-petition payment for taxes, payment of all allowed professional fees, or payments to the HOA for its portion of the insurance). Therefore, it is unlikely that the Debtor will be able to pay any proposed plan of reorganization.").

40. Therefore, Origen is entitled to relief from the stay under section 362(d)(2) because the Debtor has no equity in the Property and an effective reorganization is not feasible.

41. Based upon the foregoing, Origen requests that any order entered granting Origen

relief from the automatic stay also waive and make ineffective the 14-day stay of such order otherwise in effect under Bankruptcy Rule 4001(a)(3). A proposed form of Order granting Origen relief from stay is attached hereto as Exhibit "S."

WHEREFORE, Origen respectfully requests that this Court enter an order granting Origen relief from the automatic stay and thereby allowing Origen to exercise any and all of its rights and remedies under its Loan Documents and applicable law including, without limitation, foreclosing its mortgage on the Property, enforcing its collateral assignments of leases and rents with respect to the Property, and applying the sale proceeds and any rents collected in full or partial satisfaction, as the case may be, of the outstanding indebtedness secured by the Property; and grant such other and further relief that this Court deems just and proper.

        Respectfully submitted,

        ORIGEN WENHAM LLC,
        By its attorneys,

        /s/ *Jonathan M. Hixon*
        Jonathan M. Hixon, BBO# 692420
        Jacqueline M. Doyle, BBO# 707618
        Hackett Feinberg P.C.
        155 Federal Street, 9th Floor
        Boston, MA 02110
        (617) 422-0200
        jmh@bostonbusinesslaw.com
        jmd@bostonbusinesslaw.com

Dated: August 21, 2025

**CERTIFICATE OF SERVICE**

    I, Jonathan M. Hixon, hereby certify that on August 21, 2025, the aforementioned document was served through the Court's CM/ECF system to all parties registered in this case to receive notice via the Court's CM/ECF system.

                                        /s/ *Jonathan M. Hixon*
                                        Jonathan M. Hixon